UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


ALBERTO L. GONZALEZ,              )
          Plaintiff,             )
                                  )
          v.                      ) C.A. No. 11-cv-30271-MAP
                                  )
TIMOTHY V. DOOLING, ET AL.,       )
          Defendants.            )


MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(Dkt. Nos. 187, 189, & 195)

March 23, 2015


PONSOR, U.S.D.J.

## I.  INTRODUCTION

     In 2008, Plaintiff Alberto Gonzalez found himself

subject to community parole supervision for life (CPSL),

despite the fact that his state sentencing judge explicitly

declined to include this requirement in his sentence.  He

contends that his mis-designation resulted in substantial

injuries to him.  He brought this civil rights action under

state and federal law against twelve named Defendants and

five unnamed Defendants, all past or current members of the

Legal Unit of the Massachusetts Parole Board or individual

parole officers.  Proceedings up to now have reduced the number of defendants to three, and these -- Michelle Goldman, Ina Howard-Hogan, and Heather Hall -- have filed motions for summary judgment (Dkt. Nos. 187, 189, & 195). For the reasons set forth below, the court will allow the motions, in part.

## II.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[1]

### A.  <u>Factual Allegations</u>

Plaintiff is a convicted level-three sex offender.  On February 2, 1994, Plaintiff pleaded guilty to the offense of rape of a child, a violation of Mass. Gen. Laws ch. 265, § 22A and/or § 13B.  Again, in 2001, Plaintiff pleaded guilty to assault and battery upon a child, a violation of ch. 265, § 13B.  Pursuant to Massachusetts' sexual offender registry law, ch. 6, § 178H, a person who has been convicted of

---

[1] As required at the summary judgment stage, the facts are recited in the light most favorable to the non-moving party.  <u>RTR Techs., Inc. v. Helming</u>, 707 F.3d 84, 87 (1st Cir. 2013).  Unless otherwise noted, the facts are drawn from the exhibits attached to Defendants Goldman's and Howard-Hogan's Memoranda in Support of Summary Judgment (Dkt. Nos. 188 & 190), as well as Defendant Hall's Statement of Material Facts (Dkt. No. 198) and Plaintiff's Statement of Facts (Dkt. No. 221), along with the documents referenced therein.

certain offenses, including ch. 265, § 13B, "shall, in addition to the term of imprisonment authorized by this section, be punished by a term of community parole supervision for life." § 178H(a)(1).

On July 28, 2007, the Massachusetts State Police arrested Plaintiff for, among other crimes, failure to register as a sex offender in violation of § 178H. On October 31, 2007, Plaintiff pleaded guilty to this charge. At sentencing, though the Commonwealth moved for imposition of a sentence of CPSL pursuant to § 178H, the judge declined to do so. Instead, the judge sentenced Plaintiff to six months in the house of corrections, ninety days time served, with the balance suspended for one year. The court's denial of the Commonwealth's motion to impose CPSL was explicitly noted in writing in the criminal court docket in unmistakable terms: "No Action taken by [trial judge] on GPS[2] life time parole." (Ex. E (PB00168), Dkt. No. 201.)

---

[2] It is not explained in the record or the parties' submissions exactly what "GPS" signifies. The court takes it to refer to monitoring by a global positioning system.

3

During this time John P. Talbot, Jr.,[3] was General
Counsel for the Parole Board.  On July 11, 2008, he issued a
memorandum, called the "Talbot Memo," which provided
guidance for the Parole Board's Legal Unit attorneys in
determining whether a particular individual would be subject
to CPSL.  (Talbot Memo, Def.'s Mot. for Summ. J., Dkt. No.
195, Attach. 12 (hereinafter "Talbot Memo").)  The Talbot
Memo also delineated the prerequisites for placing an
individual on CPSL -- specifically, that a sentence of CPSL
had to be found on the offender's mittimus and criminal
docket.  (Id. at 1.)  The Talbot Memo stated:

> It is the Parole Board's position that the Courts
> must impose the sentence in order for the Board to
> have jurisdiction over the offender.  Although the
> Parole Board has jurisdiction to supervise
> offenders on lifetime parole pursuant to G.L. c.
> 127, § 133D, the Board does not have the
> jurisdiction to impose a sentence to lifetime
> parole; only the Courts may impose such a
> sentence.

(Id. at 2.)

In cases where an offender had been convicted of a
crime that would appear to subject him or her to CPSL, but a

---

[3]  Talbot was originally a named Defendant; however,
Plaintiff stipulated to the dismissal of all claims against
him.  (Dkt. No. 169.)

4

specific sentence to this effect did not appear on the mittimus or docket, the Parole Board was directed to investigate whether the sentencing judge intended to impose lifetime parole. (<u>Id.</u> at 3.) A member of the Legal Unit's staff would be expected to call the court or the District Attorney's office to "get clarification on cases where the conviction warranted a lifetime parole sentence," but no such sentence was documented on the mittimus or docket. (Def. Hall's Answer to Interrog. No. 6, Pl.'s Statement of Facts, Dkt. No. 221, Attach. 19.) Following this inquiry, authority to verify whether a particular offender was subject to CPSL rested with the attorneys of the Legal Unit. (O'Neill Letter ¶ 7, Pl.'s Statement of Facts, Dkt. No. 221, Attach. 23.) There was no practice in the Legal Unit by which the individual attorney who made the CPSL decision would record the fact that he or she was the one who made it. (Noble Dep. 35:9-20, Dkt. No. 221, Attach. 5.)

Plaintiff completed his sentence, including the probation on his suspended sentence on November 18, 2008. Upon his discharge from the suspended sentence, his parole officer told Plaintiff to appear at the parole office for

the purpose of determining whether he would be placed on CPSL.  On December 1, 2008, Plaintiff reported to the Region 5 office of the Parole Board in Springfield, Massachusetts.

It is uncontested that, on that day, Defendant Heather Hall was the only staff attorney responsible for CPSL determinations on duty in the Legal Unit.[4]  (Pl.'s Statement of Facts ¶ 44, Dkt. No. 221.)  During this period, Defendant Michelle Goldman was also occasionally called upon to answer questions or even make CPSL determinations if the Legal Unit was overburdened, even though she worked mainly as special counsel to the Chair of the Parole Board.  It is undisputed

---

[4]  Defendant Hall had previously been employed as an appellate Assistant District Attorney for Middlesex County, Massachusetts.  In that position, she represented the Commonwealth before the Supreme Judicial Court (SJC) in two cases involving the CPSL statute.  In Commonwealth v. Renderos, 440 Mass. 422, 432 (2003), the SJC held that a lifetime parole sentence under ch. 265 "is triggered by the filing of a motion by the district attorney requesting a determination on the matter ... [and] only after a hearing, and the appropriate finding or findings," may a judge impose CPSL.  In Commonwealth v. Pagan, 445 Mass. 161, 162 (2005), in discussing the statutory framework of the CPSL statute, the SJC stated that the statute provided "that the judge must determine whether a defendant shall be committed to CPSL."  These facts are relevant to Plaintiff's argument that Defendant Hall acted with reckless disregard of his constitutional rights in placing him in CPSL without evidence that this restriction had been imposed as a sentence by the trial court.

that, though Defendant Ina Howard-Hogan was later employed by the Parole Board Legal Unit, she was not yet on board in December 2008.

Subsequent to Plaintiff's self-report to the parole office, someone -- indisputably either Defendant Hall or (perhaps less likely) Defendant Goldman -- reviewed Plaintiff's case to determine whether he was subject to CPSL. The criminal court docket noting the judge's refusal to impose a sentence of CPSL was among the documents available for review by that individual. Nonetheless, the reviewing attorney -- again, either Hall or Goldman -- erroneously determined that Plaintiff was subject to CPSL.

During discovery, both Hall and Goldman -- though they did not explicitly deny that they may have made the decision -- claimed not to recall who determined that Plaintiff was subject to CPSL. (See Hall Aff. ¶ 13, Dkt. No. 195, Attach. 3; Goldman Aff. ¶ 7, Dkt. No. 188, Attach. 7.) Pursuant to the Legal Unit's practice, once the decision was made that Plaintiff was subject to CPSL, an entry was made into SPIRIT, the database used by the Parole Board to track parolees. A December 1, 2008, entry by the Parole Board in

Plaintiff's case summary stated, "Paperwork received at Central office for review of Lifetime Parole. J Pease[5] with the Legal Unit has confirmed that subject will be placed on LTPS[6] immediately." (Client Case Summ. Report 8, Dkt. No. 190, Attach. 5.) On December 2, 2008, Plaintiff signed a certificate memorializing his placement on lifetime parole. (Certificate of Lifetime Community Parole, Dkt. No. 221, Attach. 26.) As a result, as of that day, Plaintiff was subject to general supervision by the Parole Board and required to adhere to certain special conditions of supervision for the rest of his life.

After being on CPSL for a year, in March 2009, parole officer Gary Lucero[7] arrested Plaintiff for a parole violation based upon his use of drugs and alcohol at a friend's house after curfew. Plaintiff ultimately served

---

[5]  Julie Pease was a named Defendant, but Plaintiff stipulated to the dismissal of his claims against her. (Dkt. No. 215.)

[6]  The record does not explain this abbreviation, but the court assumes it stands for "lifetime parole sentence," which is another term for CPSL. (See Talbot Memo 3.)

[7]  Though he originally named Lucero as a Defendant, Plaintiff has stipulated to the dismissal of all claims against him. (Dkt. No. 215.)

thirty days in custody as a result of this supposed violation.  In May 2009, following an upsetting conversation with Lucero, Plaintiff slashed his wrists in an apparent suicide attempt.  A neighbor called 911, and Plaintiff was transported to Baystate Medical Center.  Lucero arrived later that day and, despite being notified by medical staff that Plaintiff was being admitted for treatment, took Plaintiff into custody.  Plaintiff was then transported to the Hampden County House of Corrections.

On May 12, 2009, Lucero filed a parole violation report alleging that Plaintiff violated the terms of supervision by, among other things, attempting suicide.  On May 20, 2009, a Parole Board member issued a decision provisionally revoking Plaintiff's parole and authorizing a warrant for permanent custody.

In August 2009, while in the House of Corrections, Plaintiff secured counsel through the Committee for Public Counsel Services.  On Wednesday, August 26, 2009, Plaintiff's counsel presented the Parole Board with the documentation establishing that Plaintiff had never been sentenced to CPSL.  (Aug. 26, 2009, Letter, Dkt. No. 221,

Attach. 27.)  By that time, Defendant Howard-Hogan had come on as general counsel for the Parole Board.  It is undisputed that she did not have the authority to order a prisoner's release from confinement.  (Howard-Hogan Aff. ¶ 10, Dkt. No. 190, Attach. 6.)  On Wednesday, August 26, 2009, upon receiving the letter, Howard-Hogan reviewed the relevant court records regarding Plaintiff.  Following her review, she directed the Legal Unit to contact the Hampden County District Attorney's Office to request that the matter be brought to the attention of the original trial judge. (Aug. 28, 2009, Memo., Dkt. No. 224.)

On Friday, August 28, 2009, Howard-Hogan sent an email to the Parole Board's Executive Director explaining Plaintiff's situation.  On Monday, August 31, 2009, the Executive Director forwarded the email to several Parole Board staff.  Also on that day, the Executive Director ordered the Hampden County House of Corrections parole officers to expedite Plaintiff's immediate release from custody.  Plaintiff was released from the custody of the House of Corrections on Tuesday, September 1, 2009, six days after alerting the Parole Office of the error and after 113

days of imprisonment.  In total, Plaintiff served over 143

days of confinement for supposed violations of terms of

supervision resulting from the Parole Board's incorrect

determination that Plaintiff was sentenced to CPSL.

B.  Procedural History

    Plaintiff filed his complaint on November 23, 2011, and

subsequently amended it on December 1, 2011.  He originally

named seven defendants, Timothy Dooling, Julie Pease,

Jeffrey Stone, John Talbot, Gary Lucero, Debra Burzdak, and

Peter Corriveau, all members of the Parole Board or

individual parole officers, as well as five unnamed

defendants, believed to be appointed members, agents,

servants, or employees of the Massachusetts Parole Board

and/or its Legal Unit.  (Am. Compl. ¶ 15, Dkt. No. 4.)  The

First Amended Complaint brought seven counts, including

claims under 42 U.S.C. § 1983 for federal constitutional

violations and claims under the Massachusetts Civil Rights

Act (MCRA).  After Defendants moved for dismissal pursuant

to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, on

September 19, 2012, the court dismissed Count V (MCRA claim)

as to Defendants Dooling, Pease, Stone, and Talbot, and

Count VII (right to counsel claim) against Defendant
Corriveau.[8]

On April 2, 2013, Plaintiff filed his Second Amended
Complaint, adding five more named defendants, all members or
staff attorneys of the Parole Board Legal Unit: Heather
Hall, Stacy Book, Michelle Goldman, Patricia Campbell
Malone, and Ina Howard-Hogan.  (Dkt. No. 54.)  In the months
that followed, all named Defendants filed motions for
summary judgment.  Also during this period, Plaintiff
stipulated to the dismissals of all claims against eight of
the twelve named Defendants: Cambell Malone (Dkt. No. 77);
Corriveau (Dkt. No. 158); Dooling, Book, and Talbot (Dkt.
No. 169); and Lucero, Burzdak, Pease, and Stone (Dkt. No.
215).  In light of the stipulated dismissals, on February 6,
2015, the court found the motions for summary judgment filed

---

[8]  After the ruling on Defendants' motions to dismiss,
the Talbot Memo came to light, making it clear that, at the
time they argued to the court otherwise, Defendants should
have been aware that imposition of CPSL required a
documented judicial sentence.  Plaintiff moved for
sanctions, and on July 26, 2013, Magistrate Judge Neiman
allowed Plaintiff's motion. (Dkt. No. 85.)  On August 14,
2013, the Office of the Attorney General for the
Commonwealth of Massachusetts filed a letter of apology for
its action.  (Dkt. No. 89.)

by these Defendants moot.  (Order, Dkt. No. 236.)

As a result of this history, only two counts and three

Defendants remain[9]: Count I against Defendants Hall,

Goldman, and Howard-Hogan for violation of § 1983 (due

process) and Count II against Hall, Goldman, and Howard-

Hogan for violation of § 1983 (unreasonable search and

seizure).  As noted, all three Defendants have filed motions

for summary judgment on the two remaining counts.

### III.  DISCUSSION

If there is no genuine dispute as to material facts and

the movant is entitled to judgment as a matter of law,

summary judgment is proper.  Fed. R. Civ. P. 56(a); <u>Bonneau</u>

<u>v. Plumbers & Pipefitters Local Union 51 Pension Trust Fund</u>,

736 F.3d 33, 36 (1st Cir. 2013).  The discussion below will

begin with Plaintiff's due process claim and then move on to

the claim for unreasonable search and seizure.

---

[9]  As discovery is now complete, it is clear that there
are no further John Does whose identities remain to be
uncovered.  Moreover, Plaintiff's Statement of Material
Facts makes clear that Plaintiff has identified those
individuals who may be responsible for the constitutional
deprivations he alleges.  Accordingly, the court will
dismiss the claims against Defendant John Does 1-5, the un-
named parties.

A.  <u>Count I – Due Process</u>

Plaintiff contends that in erroneously placing him on CPSL, Defendants deprived him of his constitutionally protected right to due process as guaranteed by the Fourteenth Amendment.  (2d Am. Compl. ¶¶ 65-66, Dkt. No. 54.)  Specifically, Plaintiff alleges that Defendants Hall and Goldman violated this right by authorizing the issuance of the certificate for CPSL "[d]espite having before them unequivocal documentary evidence that a CPSL sentence had not been imposed."  (Id. ¶ 29.)  As to Defendant Howard-Hogan, Plaintiff alleges that she violated his right to due process by not securing his immediate release from prison when she received the August 26, 2009, letter from Plaintiff's counsel.  (Pl.'s Statement of Material Facts ¶¶ 79-86, Dkt. No. 221.)

The fatal flaw in Plaintiff's due process argument is that, even accepting the facts in the light most favorable to him, the process was not defective.  The problem -- again, accepting Plaintiff's facts -- was that at least one of the Defendants simply bungled the designation.  Where an individual's rights are violated as a result of a state

14

actor's intentional malfeasance or negligence, no pre-violation remedy could head off the violation.  The violation occurred as a result of (to use the vernacular) a mess-up that could not be foreseen.  In this circumstance, the Constitution's due process clause may only be found to be violated where the individual lacks an adequate <u>post-violation</u> remedy for the injury resulting from the state actor's dropping the ball.  Here, as will be seen below, state law provides an adequate postdeprivation remedy for this kind of flub-driven deprivation.

A quick trot through Supreme Court authority makes this paradigm clear.[10]

The Supreme Court has made it clear that the availability of state remedies is relevant to any analysis of federal constitutional claims brought for violations of procedural due process.  <u>Zinermon v. Burch</u>, 494 U.S. 113,

---

[10]   Defendants also point out that Plaintiff cannot make out a claim for violation of substantive due process because their actions were not so severe as to "shock the conscience."  <u>Martinez v. Cui</u>, 608 F.3d 54, 63-4 (1st Cir. 2010).  Plaintiff did not respond to this argument in his memoranda in opposition. (Dkt. Nos. 218-20.)  The court therefore assumes that no substantive due process claim is being pursued.

125 (1990).  "The constitutional violation actionable under
§ 1983 is not complete when the deprivation occurs; it is
not complete unless and until the State fails to provide due
process."  Id.  In cases where a state actor is alleged to
have acted outside of established process, the central
question is whether the state has provided adequate
postdeprivation remedy.  This is true whether the state
actor deprived an individual of a constitutional right
negligently or intentionally.  Id. at 129.

Pursuant to the Supreme Court's Parratt-Hudson
doctrine, where the loss of a constitutionally protected
interest occurs as a result of an error by the state actor,
as opposed to occurring by operation of an established state
procedure, the absence of a predeprivation hearing alone
cannot constitute a due process violation.  Id. at 128
(discussing Parratt v. Taylor, 451 U.S. 527 (1981) and
Hudson v. Palmer, 468 U.S. 517 (1984)); see also Logan v.
Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982); Connor B.
ex rel. Vigurs v. Patrick, 774 F.3d 45, 60 (1st Cir. 2014)
(stating that where a state officer deviates from official
policies, "it is a mistake" and not a violation of due

process).  Under such circumstances, since an official's misstep has caused the deprivation, no hearing or other process would be effective in heading off the official's blunder.  <u>Parratt</u>, 451 U.S. at 539 (stating that postdeprivation remedies are constitutionally sufficient where there is no practical way to provide "meaningful predeprivation process"); <u>S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.</u>, 775 F.3d 82, 89 (1st Cir. 2014) (hereinafter <u>S. Commons</u>) (stating that a federal due process violation does not lie in every case where a government official "erroneously appl[ies] a state law that, if followed, would survive a procedural due process challenge").  In this circumstance, the question is whether the state's postdeprivation remedy is constitutionally adequate.[11]  <u>Garcia-Gonzalez v. Puig-Morales</u>, 761 F.3d 81, 86 n.1 (1st Cir. 2014).

---

[11]  There are no allegations in the complaint that Plaintiff's postdeprivation remedies were inadequate, despite Plaintiff's cursory arguments in his submissions. (Dkt. No. 220.)  Even assuming Plaintiff has an argument that the Legal Unit's procedures were inadequate to safeguard his rights, no evidence in the record suggests that any of the three remaining Defendants created these procedures.  Defendants were responsible only for following them, which at least one of them failed to do.

The First Circuit has identified three considerations relevant in determining whether the existence of an adequate postdeprivation remedy would operate to preclude a § 1983 suit against a state based on the absence of a predeprivation hearing: first, whether the risk of deprivation was predictable or foreseeable; second, whether a predeprivation process was possible (i.e., whether additional procedural safeguards were reasonably available); and third, whether the conduct of the state officials was "'unauthorized' in the sense used in Parratt and Hudson." San Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 480 (1st Cir. 2012) (hereinafter SGCP).  The third consideration can also be characterized as an inquiry into the scope of discretion conferred on the state actor.  Id. at 482.  On this point, the First Circuit stated,

> So long as a state has not set up a scheme so open-ended it invites unwarranted uses of summary process, and so long as a state provides an adequate after-the-fact remedy for any wrongful summary action, allegations of the kind of "random and unauthorized" mistakes in application that those who work in government sometimes make are not enough to state a procedural due process claim.

S. Commons, 775 F.3d at 89 (internal citations omitted).

18

The Supreme Court created an exception to the Parratt-Hudson doctrine's focus on the adequacy of postdeprivation process in Zinermon v. Burch, 494 U.S. 113 (1990). There, the Court found that where the deprivation was predictable and the predeprivation safeguards in place were inadequate and could, as a practical matter, be significantly improved, state actors could be sued for procedural due process violations. S. Commons, 775 F.3d at 88. However, the Zinermon exception only applies where state law "confer[s] 'broadly delegated, uncircumscribed power' to proceed in summary fashion" on the state actors. Id. If state law does not delegate authority to state actors or confer on them discretion to invoke certain safeguards, the due process claim falls under the Parratt-Hudson rubric.

Plaintiff asserts that the Parratt-Hudson doctrine does not apply here, contending that the record reflects that, despite the Talbot Memo, the Legal Unit attorneys followed an unwritten policy in flagging and investigating undocumented CPSL designations. Plaintiff disputes Defendant Hall's characterization of her CPSL determination as without discretion or unauthorized, contending that the

Legal Unit's policy in fact vested authority for CPSL determinations solely with its attorneys. This case is more like the <u>Zinermon</u> case, according to Plaintiff, where the Supreme Court found the <u>Parratt-Hudson</u> doctrine inapplicable because a better <u>predeprivation</u> process would have prevented a substantial deprivation of liberty. Finally, Plaintiff alleges that the available postdeprivation remedy is inadequate because state law only provides relief for negligence by state officials, not intentional torts.

Plaintiff's arguments notwithstanding, it is clear that the <u>Parratt-Hudson</u> doctrine applies and bars recovery here. The record shows that the process for determining whether an offender was subject to CPSL was dictated by the Talbot Memo. Defendants had no discretion to determine whether Plaintiff was subject to CPSL. Defendants' actions were circumscribed by state law, SJC case law, and the Talbot Memo. There are no facts to support the allegation that Defendants had authority to <u>set</u> the Legal Unit process, only to act pursuant to it. Moreover, Plaintiff's allegations are that Defendants acted <u>outside</u> of the established Parole Board Legal Unit procedures in erroneously placing him on

lifetime parole, despite the absence of such a sentence on the docket. The record shows that Defendant Hall or Defendant Goldman, or possibly both, committed exactly the type of "random and unauthorized" mistake that the state cannot guard against with predeprivation process. Accordingly, under <u>Parratt-Hudson</u>, the focus is on whether there is adequate postdeprivation process.

This reasoning applies with equal force to Plaintiff's allegations against Defendant Howard-Hogan. The undisputed facts are that upon receiving Plaintiff counsel's letter Defendant Howard-Hogan, instead of contacting the prison directly herself to arrange for Plaintiff's immediate release from prison, reviewed Plaintiff's paperwork, arranged for staff to contact the sentencing judge, and composed a memorandum to her superior within two business days of learning of the problem. Plaintiff was released six days (four business days) after notifying the Parole Board. As it is undisputed that Howard-Hogan did not have the authority to order Plaintiff's release herself, even viewing the facts in the light most favorable to Plaintiff, the record amounts to -- at best -- her failing to contact the

correct people to secure his freedom quickly enough.

In other words, like Defendants Hall and Goldman, Defendant Howard-Hogan made (at worst) a mistake. Again, unforeseeable, "random and unauthorized" conduct by a state official is the type of deprivation that can only be practically addressed by a meaningful postdeprivation process. Accordingly, the issue is the adequacy of the postdeprivation process available to Plaintiff.

Here, Plaintiff cannot show that he lacked an adequate postdeprivation remedy. <u>Cronin v. Town of Amesbury</u>, 81 F.3d 257, 260 (1st Cir. 1996). In fact, Plaintiff is currently pursuing the postdeprivation remedy available under Mass. Gen. Laws ch. 258, § 4, in Hampden County Superior Court, <u>Gonzalez v. Massachusetts Parole Board</u>, HDCV2011-01010. Furthermore, the fact that Plaintiff has not alleged that this remedy is procedurally inadequate is fatal to his due process claim. <u>Rumford Pharmacy, Inc. v. City of E. Providence</u>, 970 F.2d 996, 999 (1st Cir. 1992) (stating that the pleading omission of failing to allege that state law did not provide an adequate remedy "alone would warrant dismissal"). Thus, the court will grant summary judgment

for all three Defendants as to Count I.

B. <u>Count II – Unreasonable Search and Seizure</u>

Plaintiff also claims that in erroneously placing him on CPSL, Defendants Hall and Goldman deprived him of his constitutional right to be free from unreasonable search and seizure, secured by the Fourth Amendment, and that Defendant Howard-Hogan similarly injured him by her failure to secure his immediate release from jail upon receiving the August 26, 2009, letter from his counsel. To establish liability under § 1983, all Plaintiff must show is that (1) he was deprived of a constitutional or statutory right, (2) there was a causal connection between the state actor and the deprivation, and (3) state action. <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 41 (1st Cir. 2009). Moreover, for a state actor to be held liable for the deprivation of a right, the government officials' conduct must either be intentional or amount to a "reckless or callous indifference to an individual's constitutional rights." <u>DeToledo v. Cnty. of Suffolk</u>, 379 F. Supp. 2d 138, 143 (D. Mass. 2005) (Stearns, J.). The Supreme Court has "acknowledged that 'something less than intentional conduct, such as

recklessness or gross negligence, [could be] enough to trigger the protections of the Due Process Clause.'" _Id._ at 143-44 (quoting Daniels v. Williams, 474 U.S. 327, 334 n.3 (1986)).

None of the Defendants disputes that she was acting under color of state law at the time Plaintiff suffered his deprivation of rights. Instead, each disputes that there are sufficient facts in the record to support a finding by a preponderance of the evidence that she was the one whose actions caused the deprivation. Because the arguments of Defendants Hall and Goldman rely on a different factual underpinning than those offered by Defendant Howard-Hogan, they will be addressed separately.

Defendants Hall and Goldman argue that Plaintiff cannot show which one of them deprived him of his civil rights. Each argues that, at best, the evidence shows that either Defendant Goldman or Defendant Hall erroneously subjected Plaintiff to CPSL, but no sufficient evidence demonstrates who that might have been.

Additionally, both Defendants argue that Plaintiff cannot show that any action she may have taken to place him

24

on CPSL was motivated by the requisite intent.  Though

government officials may be held liable under § 1983 for due

process violations "if their conduct reflects a reckless or

callous indifference to an individual's rights," <u>Gutierrez-

Rodriguez</u>, 882 F.2d at 559, Defendants argue that the

evidence shows that, at worst, she acted negligently.[12]

Defendants' assessment of the record is inaccurate.

There is certainly sufficient evidence in the record for a

jury to conclude that either Defendant Hall or Goldman, or

---

[12]  Defendants also argue that unreasonable search and
seizure claims are reviewed under the "objective legal
reasonableness" standard, <u>Saucier v. Katz</u>, 533 U.S. 194,
(2001), <u>abrogated in part by</u> <u>Pearson v. Callahan</u>, 555 U.S.
223 (2009) (holding that the two-step process mandated in
<u>Saucier</u> was no longer an inflexible requirement).  "If the
officer's mistake as to what the law requires is reasonable,
however, the officer is entitled to the immunity defense."
<u>Id.</u> at 205 (discussing qualified immunity in the context of
a § 1983 excessive force claim).  Thus, Defendants assert
the mistake of placing Plaintiff on CPSL was reasonable and,
therefore, they are entitled to qualified immunity.
    This qualified immunity argument was both rejected by
the court in its denial of Defendants' motions to dismiss
(Dkt. No. 37) as well as the basis for the court's granting
of Plaintiff's motion for sanctions (Dkt. No. 85).  There is
simply no question at this point that Defendants knew at the
time they issued a certificate of CSPL for Plaintiff that
Massachusetts law clearly required the imposition of this
sentence by a <u>judge</u>.  There is no basis for the argument
that a Parole Board attorney's mistake as to the law on this
point could be deemed reasonable.

(since they occasionally worked together) possibly both of them, were responsible for depriving Plaintiff of his constitutional right, and that the deprivation came about from actions taken with the requisite intent or callous disregard. At this stage, the facts viewed in light most favorable to Plaintiff permit the jury to weigh the credibility of both Defendant Goldman's and Hall's supposed lapses of memory.

Significantly, neither actually denies disregarding the pertinent document and mis-designating Plaintiff; each merely claims not to recall one way or the other. (Hall Aff. ¶ 13, Dkt. No. 195, Attach. 3; Goldman Aff. ¶ 7, Dkt. No. 188, Attach. 7.) The record establishes that either Defendant Goldman or Defendant Hall, or possibly both of them working in tandem, was responsible for placing Plaintiff on CPSL. Based on the record, a jury could find that the evidence that Plaintiff should not have been placed on CPSL was right in front of either or both of them, staring them in the face.

To allow summary judgment in this circumstance would deprive a party who has indisputably suffered a severe

injury as a result of a state official's bungling of any remedy, based solely on the fact that the responsible officials, sheltered inside an impenetrable bureaucratic maze, claim not to recall which of them committed the foul. A plaintiff, at a minimum, has the right to test, and a jury to determine, a defendant's disavowals in a scenario like this, where circumstantial evidence of responsibility is strong and where one of the two remaining defendants, or possibly both, might be found to be liable.  See Reed v. MBNA Mktg. Systs., Inc., 333 F.3d 27, 37 (1st Cir. 2003) (stating that at the summary judgment stage the court must credit the plaintiff's version of events and let a jury determine whether or not to believe it).

Even if the record were only sufficient to show one of these two Defendants could have authorized the placement of Plaintiff on CPSL, it is not that case, as Defendants argue, that Plaintiff cannot meet the burden of establishing by a preponderance of the evidence which one of Defendants was the actual cause of Plaintiff's injuries.  The summary judgment record does not show that the evidence at trial could produce no more than a fifty percent chance that

either Defendant violated Plaintiff's rights.  The jury

might find, for example, that, since Defendant Goldman did

not actually work in the Legal Unit on the day Plaintiff was

subjected to CPSL, Defendant Hall, as the only attorney

formally on duty at the Parole Board on December 1, 2008,

was far more likely to have made the erroneous call than was

Defendant Goldman.  Conversely, the jury might find

Defendant Hall's testimony that she does not recall placing

Plaintiff on CPSL more convincing or credible than that of

Defendant Goldman.  Put simply, this is precisely the type

of factual dispute that cannot be resolved at summary

judgment; it is the province of the jury to weigh the

evidence at trial and determine whether Plaintiff has met

his burden by a preponderance of the evidence as to whether

Defendant Hall or Goldman, or both of them, was responsible

for erroneously placing him on CPSL.

Finally, there is more than sufficient evidence in the

record to permit a jury to conclude that either of

Defendants, or both, acted "intentionally or recklessly."

Specifically, given both Defendants' training as attorneys,

a jury could reasonably conclude that the imposition of CPSL

on Plaintiff despite the trial judge's unequivocal refusal to impose such a sentence evinced a reckless disregard of Plaintiff's due process liberty rights.  Given the Talbot Memo's admonition on this point, Defendants Hall and Goldman could be found by a jury to have had "actual knowledge of impending harm, easily preventable" in placing Plaintiff on CPSL despite the lack of such sentence on the docket. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 498 (1st Cir. 2011).  Accordingly, granting summary judgment on this count for Defendants Hall or Goldman based on a "mere negligence" argument would be inappropriate.

The evidence in the record regarding Defendant Howard-Hogan, on the other hand, is insufficient to survive summary judgment.  It is undisputed that Defendant Howard-Hogan did not begin working at the Parole Board until 2009. Accordingly, as Plaintiff concedes, she cannot be held responsible for the initial wrongful imposition of CPSL on Plaintiff in December 2008.  Thus Plaintiff seeks to hold Defendant Howard-Hogan liable for the time he remained in jail between the receipt of counsel's letter and his release six days later.  Specifically, Plaintiff claims that in not

acting to secure Plaintiff's <u>immediate</u> release from jail upon receiving the letter from counsel on August 26, 2009, Defendant Howard-Hogan purposefully continued the unlawful deprivation of Plaintiff's rights.

Even taking the facts in the light most favorable to Plaintiff, he cannot point to sufficient facts in the record for a jury to find by a preponderance of the evidence that Defendant Howard-Hall's actions amounted to reckless disregard for his rights. It is also doubtful that the two days Defendant Howard-Hogan took to review the letter from Plaintiff's counsel in August 2009 and prepare the memorandum to her superior could be said to be an action depriving Plaintiff, to any degree, of a constitutional right. It is undisputed that Defendant Howard-Hogan lacked the authority to order Plaintiff's immediate release herself. She investigated the claims in the letter from Plaintiff's counsel and notified the Executive Director of the Parole Board within two days. These facts simply do not support the inference that Defendant acted with reckless disregard to Plaintiff's rights.

In sum, as to Count II, the court will deny Defendants

Hall's and Goldman's motions for summary judgment and allow Defendant Howard-Hogan's motion for summary judgment.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the court hereby DENIES in part and ALLOWS in part Defendant Hall's Motion for Summary Judgment (Dkt. No. 195) and Defendant Goldman's Motion for Summary Judgment (Dkt. No. 187).  These motions are allowed as to Count I for both Defendants, and denied as to Count II for both Defendants.  The court hereby ALLOWS Defendant Howard-Hogan's Motion for Summary Judgment in its entirety. (Dkt. No. 189.)  Finally, the court dismisses the claims against the unknown Defendants, John Does 1-5.  The clerk is ordered to set this case for a final pretrial conference.

It is So Ordered.

<u>/s/ Michael A. Ponsor</u>
MICHAEL A. PONSOR
U.S. District Judge